## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| **United States of America,**<br><br>        **Plaintiff,**<br><br>**vs.**<br><br>**Jose Angel Espinoza-Melgar,**<br><br>        **Defendant.** | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS COUNT 2 OF THE INDICTMENT**<br><br>**Case No. 2:21-cr-204-DAK**<br><br>**Judge Dale A. Kimball** |

This matter is before the court on Defendant Jose Angel Espinoza-Melgar's Motion to Dismiss Count 2 of the Indictment and Second Motion to Dismiss Count 2 of the Indictment. Both motions pertain to 18 U.S.C. §922(g)(3), which restricts the possession of firearms for an individual who is an "unlawful user of or addicted to any controlled substance." Defendant's first motion is based on the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Based on *Bruen*, Defendant argues that § 922(g)(3) violates his Second Amendment right to possess a firearm. The second motion challenges § 922(g)(3) as being unconstitutionally vague. On May 31, 2023, the court held a hearing on the two motions. At the hearing, Nathan K. Phelps represented Defendant, and Jennifer Muyskens represented the United States. At the conclusion of the hearing, the court took the motions under advisement.[1] The court has carefully considered the memoranda filed by the parties, the

---

[1] The Tenth Circuit has not yet ruled on either issue, but it is currently considering whether § 922(g)(3) is unconstitutionally vague. *See United States v. Morales-Lopez*, Case No. 22-4074. At the hearing in this matter, Defendant's counsel stated that his client is not in custody and that

arguments made by counsel at the hearing, and the law and facts pertaining to the motions. Now being fully advised, the court issues the following Memorandum Decision and Order denying both motions to dismiss.

## I. BACKGROUND

On or about March 18, 2021, Espinoza-Melgar was arrested on a felony warrant for aggravated robbery in Salt Lake City, Utah.[2] ECF No. 65 at 1. During an inventory search of the vehicle that Espinoza-Melgar was driving, the officers discovered (1) an allegedly stolen firearm with the name "Sgt. Joshua Matthews" engraved on the firearm's slide, and (2) three grams of marijuana. After he was read his *Miranda* rights and agreed to speak with officers, Espinoza-Melgar "stated he believed the firearm was stolen due to the engraving" and "admitted to having an addiction to using marijuana, saying that he has been using marijuana every day since the fifth grade." *Id.* at 2.

On May 5, 2021, the grand jury returned an Indictment against Espinoza-Melgar, charging him with two counts: Count 1, Possession of a Stolen Firearm, in violation of 18 U.S.C. § 922(j); and Count 2, Unlawful User of a Controlled Substance in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(3).

---

Defendant would not object to waiting for the Tenth Circuit's decision on the vagueness issue. On July 12, 2023, the Tenth Circuit scheduled oral argument for September 19, 2023. Because it may be some time before the Tenth Circuit issues its decision, the court will decide the issue.

[2] The facts set forth in the background section are drawn from the United States' Responses to Espinoza-Melgar's Motion and Second Motion to Dismiss Count 2 of the Indictment. ECF Nos. 65 and 73. Espinoza-Melgar's motions did not include any facts or background, but Espinoza-Melgar has not challenged the facts set forth by the United States.

## II. DISCUSSION

Espinoza-Melgar first moved to dismiss Count 2 of the Indictment, arguing that 18 U.S.C. § 922(g)(3) violates the Second Amendment to the United States Constitution in light of the Supreme Court's recent decision in *Bruen*. 142 S. Ct. 2111 (2022). Espinoza-Melgar later moved to dismiss Count 2 on the additional ground that § 922(g)(3) is unconstitutionally vague, violating both the Constitution's separation-of-powers framework and the Fifth Amendment to the Constitution. The court considers these arguments in turn.

### A. Constitutionality of 18 U.S.C. § 922(g)(3) After *Bruen*

Section 922(g)(3) states in relevant part that "[i]t shall be unlawful for any person who is an unlawful user of or addicted to any controlled substance to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition." Espinoza-Melgar argues that §922(g)(3) is "no longer viable" following *Bruen* and that Count 2 "thus fails to state an offense." ECF No. 64 at 1.

In *Bruen,* the United States Supreme Court described that in the years following *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010), the United States Courts of Appeals had "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." 142 S. Ct. at 2125. The Tenth Circuit was among those Courts of Appeals that employed a means-ends framework. *See, e.g.*, *United States v. Reese*, 627 F.3d 792 (10th Cir. 2010).

But in *Bruen*, the Supreme Court rejected that framework, holding instead that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively

protects that conduct." 142 S. Ct. at 2126. That presumption can be overcome only when the government successfully "demonstrate[s] that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* In other words, a court may uphold a regulation only when the government "affirmatively prove[s] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

Thus, to determine if § 922(g)(3) remains viable post-*Bruen*, the court must first assess whether the Second Amendment's plain text covers Espinoza-Melgar's alleged conduct. As explained below, the court concludes that the Second Amendment indeed covers Espinoza-Melgar's alleged conduct. The court must then determine whether the presumptive constitutional protection of Espinoza-Melgar's alleged conduct can be overcome based on the government's showing that § 922(g)(3) is consistent with the United States' historical tradition of firearm regulation. The court finds that the government has successfully demonstrated that § 922(g)(3) is consistent with our country's historical tradition of regulating firearms.

### 1. Espinoza-Melgar's Alleged Conduct Was Covered by the Second Amendment's Plain Text.

The Second Amendment to the United States Constitution states that "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The *Heller* Court held that the Second Amendment's plain text "guarantee[s] the individual right to possess and carry weapons in case of confrontation."[3] 554 U.S. at 591.

---

[3] As astutely recognized by Judge Parrish, another judge in this district, "[f]or much of this Nation's history, state and federal courts largely held that this Amendment guaranteed the rights

The United States alleges that Espinoza-Melgar violated § 922(g)(3) because, while knowing that he was an unlawful user of a controlled substance (which he has admitted), he knowingly possessed a firearm. ECF No. 1 at 2. Because Espinoza-Melgar violated the law as an unlawful user of a controlled substance, the United States argues that he is not among "the people" to whom the right codified in the Second Amendment is endowed. ECF No. 65 at 6. Thus, the United States contends, "regulations governing non-law-abiding citizens' use of firearms and ammunition do not implicate *Bruen* and *Heller*." *Id.* In support of this contention, the United States emphasizes that "*Bruen* and its concurring opinions define the Second Amendment as applying to 'law-abiding citizens' at least twenty-one times." *Id* i

The court rejects this argument. First, there is no reason to think that "the people, as used in the Second Amendment, bears a different definition than "the people" as used in other constitutional provisions. Seven constitutional provisions refer to "the people": the preamble, Article I § 2, and the First, Second, Fourth, Ninth, Tenth, and Seventeenth Amendments. The *Heller* Court noted that, in the Second Amendment and in the other six uses (ignoring the Seventeenth Amendment's use), "the term unambiguously refers to all members of the political community, not an unspecified subset." 554 U.S. at 580. And the Seventeenth Amendment's use

---

of states to organize militias and of individuals to keep weapons connected to service in these militias." *United States v. Brown*, Case No. 2:22-cr-00239-JNP-CMR, 2023 WL 4826846, at *2 (D. Utah July 27, 2023) (citing Stephen Kiehl, *In Search of a Standard: Gun Regulations After Heller and McDonald*, 70 MD. L. REV. 1131, 1134 (2011)). "But in 2008, the Supreme Court dramatically changed course in *District of Columbia v. Heller,* 554 U.S. 570 (2008). In reversing much of the Second Amendment's existing case law, the Court held that the Constitution protects an individual's right to keep and bear arms for traditionally lawful purposes, such as self-defense. *Id*. at 635." *Brown*, 2023 WL 4826846, at *2.

of "the people," which requires United States Senators to be elected by "the people" of each State, implies no additionally restrictive definition. If "the people" includes only law-abiding citizens, then those who violate the law could plausibly lose the right not only to possess firearms, but also to peaceably assemble and to be free from unreasonable searches and seizures. The court finds that argument to be untenable.

Regarding the United States' argument that *Bruen* and its concurring opinions define the Second Amendment as applying to "law-abiding citizens" at least twenty-one times, the court notes that the petitioners in *Bruen* were "law-abiding . . . citizens." 142 S. Ct. at 2124–25. Thus, while *Bruen* clearly establishes that being a law-abiding citizen is sufficient to be included in "the people" to whom the Second Amendment right is endowed, any indication in *Bruen* that being a law-abiding citizen is necessary to be included in "the people" is dicta. *See Range v. Att'y General*, 69 F.4th 96,101 (3d Cir. 2023) (*en banc*) (finding that "the criminal histories of the plaintiffs in *Heller, McDonald*, and *Bruen* were not at issue in those cases. So, their references to 'law-abiding, responsible citizens' were dicta.").

Finally, limiting the right granted by the Second Amendment to apply only to law-abiding citizens would raise a host of questions regarding who qualifies as a "law-abiding" citizen. If an otherwise law-abiding person with a concealed firearm is pulled over for speeding or running a stop sign, would their firearm possession still be protected by the Second Amendment? Would the Second Amendment protect an adult who owned a firearm if that individual had been convicted of a misdemeanor as a child? Fortunately, these are questions that the court need not answer. The court concludes that Espinoza-Melgar is among the people

protected by the Second Amendment, joining the many district courts within the Tenth Circuit that have reached the same conclusion.[4] And it is clear that § 922(g)(3) regulates Second Amendment conduct. Thus, the Supreme Court's understanding of the plain text of the Second Amendment covers Espinoza-Melgar's alleged conduct, and "the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126.

### 2. The United States Has Demonstrated That § 922(g)(3) Is Consistent with the Nation's History of Firearm Regulation.

To overcome the presumption that Espinoza-Melgar's conduct is protected by the Second Amendment, the government bears the burden of "demonstrat[ing] that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* The Supreme Court recognizes that an individual's Second Amendment right to possess and carry firearms is "not unlimited," *Heller*, 554 U.S. at 595, but modern regulations should not exceed those restrictions

---

[4] *See, e.g.*, *Brown*, 2023 WL 4826846, at *6; *United States v. Carrero*, Case No. 2:22-cr-00030, 635 F. Supp. 3d 1210, 1212 (D. Utah 2022); *United States v. Lewis*, ___ F. Supp. 3d ___, 2023 WL 187582 (W.D. Okl. Jan 13, 2023); *United States v. Coombes*, 629 F. Supp. 3d 1149, 1156 (N.D. Okl. 2022); *United States v. Gray*, Criminal Case No. 22-cr-00247-CNS, 2022 WL 16855696, *3 (D. Colo. Nov. 10, 2022).

The court recognizes, however, that other courts have reached the opposite conclusion, finding that the Second Amendment extends its rights only to law-abiding people. *See, e.g.*, *Range v. Att'y General*, 69 F.4th 96 (3d Cir. 2023); *United States v. Medrano*, Case No. 3:21-CR-39 (GROH), 2023 WL 122650, *2 (N.D. W. Va. Jan 6, 2023); *United States v. Sanchez*, ___ F. Supp. 3d ___, 2022 WL 17815116, at *2-3 (W.D. Tex. Dec. 19, 2022); *United States v. Gonzalez*, No. 1:22-CR-00054, 2022 WL 17583769, at *2 (D. Utah Dec. 12, 2022); *United States v. Nevens*, 2022 WL 17492196, at *2 (C.D. Cal. Aug. 15, 2022).

that the Framers would have considered to be the outer bounds of the Second Amendment. *See Bruen*, 142 S. Ct. at 2142 (quoting *Heller*, 554 U.S. at 594).[5]

The Supreme Court takes an expansive view regarding how courts should determine whether a modern regulation "is consistent" with historical firearm regulations, instructing lower courts to "reason[] by analogy." *Id.* at 2132.  Thus, the *Bruen* Court requires merely that the government "identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 2133. The Court emphasizes that while legislatures do not have a "blank check" to regulate firearms, the *Bruen* framework is not intended to impose a "regulatory straightjacket [sic]," either. *Id.*

To determine whether a modern regulation has an historical analogue, courts should compare "*how* and *why* the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2133 (emphasis added). The Court noted that "individual self-defense is 'the *central component*' of the Second Amendment right." *Id*. (internal quotations and citations omitted). "Therefore, whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are 'central' considerations when engaging in an analogical inquiry." *Id*. (citing *McDonald*, 561 U.S. at 767) (cleaned up).  Espinoza-Melgar argues that § 922(g)(3)—which prohibits unlawful drug users

---

[5] To be sure, "[a] variety of laws regulating firearms were already in place during the Founding Era." Saul Cornell and Daniel DeDino, *A Well-Regulated Militia: The Early American Origins of Gun Control*, 73 FORDHAM L. REV. 487, 505 (2004).

from possessing firearms—does not have a sufficiently similar historical analogue that prohibits firearm possession either in the same way or for the same reasons as § 922(g)(3). But, as discussed below, the court finds that both the "why" and the "how" regarding § 922(g)(3)'s firearm-possession restriction are analogous to historical regulations.

> i. **The justification for the burden imposed by § 922(g)(3) on the right to armed self-defense is analogous to historical prohibitions of firearm possession.**

First, Espinoza-Melgar urges the court to preliminarily consider whether "looking for a historical analogue is proper at all," ECF No. 67 at 6, given the *Bruen* Court's commentary that "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." 149 S. Ct. at 2131. But this argument is circular—it urges the court to not look for a historical analogue because no distinctly similar historical regulation exists, which the court could not know without looking. Thus, the court must proceed to assess whether the government carried its burden of demonstrating that a historical analogue to § 922(g)(3) exists.

In arguing that the justification for the burden is similar to historical tradition, the United States argues that "the two most readily analogous firearms regulations are those that prohibit the possession of firearms by felons and those that prohibit possession by the mentally ill." ECF No. 65 at 11 (citing *United States v. Yancey*, 621 F.3d 681, 684-85). The United States further contends that "'Congress enacted the exclusions in § 922(g) to keep guns out of the hands of presumptively risky people[,]' including unlawful drug users and addicts." ECF No. 65 at 11 (quoting *United States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2010)).

There is no doubt that "the Anglo-American right to bear arms has always recognized and accommodated limitations for persons perceived to be dangerous." *United States v. Carter*, 669 F.3d 411, 415 (4th Cir. 2012). And "[l]egislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed." *United States v. Jackson*, 2023 WL 3769242, at *6 (8th Cir. 2023). Indeed, in *United States v. Brown*, Case No. 2:22-cr-00239-JNP-CMR, 2023 WL 4826846, at *2 (D. Utah July 27, 2023), another judge in this district thoroughly analyzed several historical analogues, including "England's pre-Revolution tradition of regulating firearm possession by those who pose a danger to the community," and the fact that in the early United States, many colonies and states disarmed groups that these governments believed were untrustworthy or dangerous.  The court determined that "[u]ltimately, laws limiting groups the political community deemed 'dangerous' from possessing firearms are strong evidence that this Nation has a historical tradition of limiting the gun rights of those that may pose a threat in the future." *Id.* at *11. Although the court was evaluating the constitutionality of § 922(g)(8)—not § 922(g)(3)—the analogues are equally applicable in the instant case.

In *Yancey*, the Seventh Circuit analyzed the constitutionality of § 922(g)(3) in the wake of *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), and *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3047 (2010). The *Yancey* court found that "[k]eeping guns away from habitual drug abusers is analogous to disarming felons," 621 F.3d at 684, and that "habitual drug abusers, like the mentally ill, are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms." *Id.* at 685.

*Yancey*'s conclusion comports with the legislative history of the Gun Control Act of 1968, which Congress passed to "keep firearms out of the hands of those not legally entitled to possess them because of . . . criminal background, or incompetency." S. Rep. No. 90-1501 at 22 (1968); *see also United States v. Cheeseman*, 600 F.3d 270, 280 (3d. Cir. 2010) (describing that § 922(g)(3) codified "Congress' intent to keep firearms out of the possession of drug abusers, a dangerous class of individuals"); *cf. Scarborough v. United States*, 431 U.S. 563, 572 (1977) ("The legislative history [of the Omnibus Crime Control and Safe Streets Act of 1968, passed in the same year as the Gun Control Act that created § 922(g)(3)] . . . supports the view that Congress sought to rule broadly to keep guns out of the hands of those who have demonstrated that 'they may not be trusted to possess a firearm without becoming a threat to society.'" (quoting 114 Cong. Rec. 13868, 14773 (1968)).[6]

The court agrees with the United States that § 922(g)(3)'s prohibition is consistent with historical tradition. As the court in *United States v. Lewis* recognized, "[d]rug addicts and unlawful users of controlled substances . . . may reasonably be viewed as more likely than the general population to engage in crime (including robbery and other crimes of violence to feed their habit, as well as trafficking) and as less likely than the general population (due at least to altered mental states both while under the influence and while in withdrawal) to handle a firearm

---

[6] Indeed, *Yancey*'s historical analysis of state laws disarming alcoholics and habitual drug users has been positively cited by many courts in rejecting *Bruen* challenges to § 922(g)(3).  *See*, *e.g.*, *United States v. Posey*, ___ F. Supp. 3d ___, 2023 WL 1869095, at *8 (N.D. Ind. Feb. 9, 2023) (compiling cases).

responsibly." Crim. No. 22-0222-WS, 2023 WL 4604563 (S.D. Ala. July 18, 2023) (citing cases that have arrived at similar conclusions post-*Heller*).[7]

Moreover, the Supreme Court has repeatedly confirmed the presumptive constitutionality of prohibitions on the possession of firearms by felons and the mentally ill. *See Heller*, 554 U.S. at 626; *McDonald*, 130 S. Ct. at 3047; *see also Bruen*, 142 S. Ct at 2157 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or *McDonald v. Chicago* about restrictions that may be imposed on the possession or carrying of guns." (internal citation omitted)); *id.* at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations" including "prohibitions on the possession of firearms by felons and the mentally ill." (quoting *Heller*, 554 U.S. at 626)).[8]

And, vitally, the *Bruen* Court recognized that "the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated." *Bruen*, 142 S. Ct. at 2132. The United States and Espinoza-Melgar—along with many other courts attempting to apply the

---

[7] The court also finds historical support for § 922(g)(3) in the form of early American intoxication laws. In *Fried v. Garland*, the court recognized a history of statutes from the founding and reconstruction eras that restricted gun possession by the intoxicated. ___ F. Supp. 3d___, 2022 WL 16731233, *7 (N.D. Fla. Nov. 4, 2022) (describing a 1655 Virginia statute, a 1771 New York statute, and several from the era following the ratification of the Fourteenth Amendment). Some of these statutes prevented individuals from carrying firearms while intoxicated, and others prohibited individuals from firing a gun while intoxicated. *Id.* The Court finds that these additional historical examples of statutes regulating firearm possession and use by individuals using intoxicating substances supplement and affirm the historical findings in *Yancey*.

[8] Notably, "it was not until 1968 that Congress barred the mentally ill from possessing guns, and it was in that same legislation that habitual drug abusers were prohibited from having guns." *Yancey*, 621 F.3d at 683 (citing Gun Control Act of 1968, Pub. L. 90-618, § 102, 82 Stat. 1213, 1220).

Supreme Court's enigmatic instructions in *Bruen*—debate the degree to which an historically analogous firearm regulation must align with a modern-day firearm regulation to pass constitutional muster under the Second Amendment. And this debate hinges on "why" these Founding-era regulations prohibited firearm possession. If historical regulations were intended to prohibit the possession of firearms among only violent individuals, on one hand, then a narrow class of modern regulations would be sufficiently analogous to those historical precedents. But if, on the other hand, the historical regulations were intended to prohibit the possession of firearms among individuals who manifested a lack of respect for the law, then a much broader class of modern regulations would be sufficiently analogous.

The Third Circuit's recent decision in *Range v. Att'y General*, 69 F.4th 96 (3d Cir. 2023), illustrates this debate. On rehearing *en banc*, the majority reversed the panel's previous decision[9] and determined that the government had not carried its burden in showing that the Nation's history and tradition of firearm regulation supported disallowing a felon from possessing a firearm under § 922(g)(1). The majority intimates throughout the opinion that *dangerousness* is the touchstone regarding whether someone can be dispossessed of their guns.[10] *Id.* (majority

---

[9] *See Range v. Att'y Gen.*, 53 F.4th 262, 266 (3d Cir. 2022) (per curiam), *vacated*, *reh'g en banc granted*, 56 F.4th 992 (3d Cir. 2023).

[10] The majority concluded that it "need not decide" if "dangerousness is the touchstone because the Government did not carry its burden to provide a historical analogue to permanently disarm someone like Range, whether grounded in dangerousness or not." *Range*, 69 F.4th at 104 n.9. "Because the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." *Id.*

opinion). In her dissent, however, Judge Krause argues for a broader understanding of these historical regulations, noting that the "historical record [from the Glorious Revolution through the Founding] demonstrates that, contrary to the majority opinion, legislatures have historically possessed the authority to disarm entire groups . . . whose conduct evinces disrespect for the rule of law." *Id.* at 19 (Krause, J., dissenting).

This court, however, does not need to settle this precise question, nor is any court competent to divine the perhaps unknowable intentions of Founding-era legislators. "Whether those [historical restrictions on the Second Amendment] are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness," *United States v. Jackson*, 69 F.4th 495, 505 (8th Cir. 2023), this court finds that Congress acted within the historical tradition when it enacted § 922(g)(3) and the prohibition on possession of firearms by unlawful drug users. Using marijuana evinces disrespect for the rule of law, and as the legislative history of § 922(g)(3) shows, Congress believed that unlawful drug users could be dangerous.[11]

---

It is important to note that Range had been "convicted of a nonviolent, non-dangerous misdemeanor," which, under Pennsylvania law, was punishable by up to five-years' imprisonment. *Id.* at 98-99. That conviction had precluded Range from possessing a firearm because federal law generally makes it "unlawful for any person . . .  who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). The nonviolent nature of Range's offense—notwithstanding Range's manifested disrespect for the law— seemingly played a dispositive role in the majority's analysis.

[11] *See, e.g.*, *United States v. Cheeseman*, 600 F.3d 270, 279-80 (3d. Cir. 2010).

The court need not—and should not—address the wisdom of Congress's decision to disarm individuals like Espinoza-Melgar, who possessed a firearm while having admittedly used marijuana every day for many years. "Where, as here, the legislature has made a reasonable and considered judgment to disarm those who show disrespect for the law, it is not the place of unelected judges to substitute that judgment with their own." *See Range*, 69 F.4th at 118 (Krause, J., dissenting).

### ii.  The burden imposed by § 922(g)(3) on the right to armed self-defense is analogous to historical prohibitions of firearm possession.

Espinoza-Melgar asserts that the specific "lack of laws aimed at those who possessed guns [while *under the influence of alcohol or other intoxicants* [during the period of the Founding] indicates that, though people were aware of the potential problems that could occur, they nonetheless did not expect those who used intoxicants to be disarmed and defenseless." ECF No. 67 at 6 (emphasis added).[12] Espinoza-Melgar notes that Founding-era regulations merely forbade "sho[oting] off firearms while drinking," ECF No. 67 at 7. These historical regulations, Espinoza-Melgar argues, did not prohibit *possession* while drinking. *See id.*

Yet, Founding-era firearm regulations "recognized that guns and alcohol were a bad combination." *United States v. Lewis*, Case No. CR-22-368-F, 2023 WL 187582, at *4 n.5 (W.D. Okla., Jan. 13, 2023); *Fried v. Garland*, ___ F. Supp. 3d___, 2022 WL 16731233, at *7 (N.D. Fla. Nov. 4, 2022) (recognizing a history of statutes from the founding and reconstruction eras that restricted gun possession by the intoxicated). Moreover, countless Founding-era firearms

---

[12] It is unclear to the court whether this argument was made under the "why" or the "how" prong of the *Bruen* analysis—or perhaps both. The court rejects the argument under both prongs.

restrictions banned possession based on the possessor's *status*, not based solely on that individual's other activities at the time of possession.

In *Range,* the court makes clear that the historical record is saturated with Founding-era regulations that prohibited individuals from possessing firearms not merely when an individual performed a discrete untrustworthy action, but in fact prohibited firearm possession among individuals who were members of groups that were "presumptively risky." *See Range*, 69 F.4th at 105 ("Founding-era governments disarmed groups they distrusted like Loyalists, Native Americans, Quakers, Catholics, and Black[] [people]"); *see also United States v. Lewis*, Crim. Action 22-0222-WS, 2023 WL 4604563, at*14 (S.D. Ala. July 18, 2023) (noting that "Catholics, Native Americans, and loyalists were historically disarmed regardless of whether they had personally engaged in any violent activity or threatening conduct.").

In addition, as the *Yancey* court observed, "unlike those who have been convicted of a felony or committed to a mental institution and so face a lifetime ban, an unlawful drug user . . . could regain his right to possess a firearm simply by ending his drug abuse. In that sense, the restriction in § 922(g)(3) is far less onerous than those affecting felons and the mentally ill." *Yancey*, 621 F.3d 681, 686-87. The *Yancey* court went on to state that "[w]e have observed before that there is no constitutional problem with separating guns and drugs. The prohibition in § 922(g)(3) bars only those persons who are *current* drug users from possessing a firearm, and "[i]t is obvious that the tenses used throughout Title IV [including § 922(g)] were chosen with care." *Id*. at 687 (internal quotations and citations omitted) (quoting *Scarborough v. United*

*States,* 431 U.S. 563, 570, (1977)). As in *Yancey,* the gun ban faced by Espinoza-Melgar extends only so long as he unlawfully uses drugs. He ultimately controls his right to possess a gun.[13]

The court is not persuaded that the distinction between prohibiting gun *possession* while intoxicated and prohibiting gun *use* while intoxicated is significant under the *Bruen* framework. Therefore, the court finds that the burden imposed by § 922(g)(3), prohibiting unlawful drug users from possessing firearms—based on their "presumptively risky" status—is well supported by Founding-era analogous regulations, and is arguably less onerous than the historical tradition of disarming those who engage in criminal activity.[14]

### iii. Summary

The court finds that the United States has met its burden of demonstrating that § 922(g)(3) "is consistent with the Nation's historical tradition of firearm regulation," *Bruen*, 142

---

[13] Espinoza-Melgar also seeks to distinguish § 922(g)(3) from other laws that prohibit felons and mentally ill individuals from possessing firearms. Unlike felons (who have been convicted) and mentally ill individuals (who have been "adjudicated as a mental defective or . . . ha[ve] been committed to a mental institution," 18 U.S.C. § 922(g)(4)), "a person need not have been previously labeled an addict or unlawful user through some process to lose the right to possess a firearm." ECF No. 67 at 6. Thus, Espinoza-Melgar argues, § 922(g)(3)'s "lack of notice and process" renders § 922(g)(3) sufficiently disanalogous from prohibitions on felons' or mentally ill individuals' possession of firearms. But this due-process argument does not carry water given the relative leniency of the possession ban created by § 922(g)(3): Espinoza-Melgar is prohibited from possessing firearms only while he is an unlawful drug user, not for the remainder of his life.

[14] *See also Fried*, 2022 WL 16731233, at *7; *Posey*, 2023 WL 1869095, at *10 (finding that the burden imposed by § 922(g)(3) "only endures for as long as the individual is an unlawful user or addict, leaving them free to regain their full Second Amendment rights at any time. In contrast, the burden imposed upon convicted felons and the mentally ill is a lifelong one. Therefore, the Court finds that this, relatively lenient, burden placed on a defined group of persons is directly analogous to the burden placed on felons and the mentally ill.") (internal citations omitted).

S. Ct. at 2126, and therefore, that Espinoza-Melgar's alleged conduct "falls outside the Second

Amendment's 'unqualified command.'" *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S.

36, 50, n.10 (1961)).

Accordingly, the court joins with the overwhelming majority of courts that have

considered whether § 922(g)(3) passes constitutional muster after *Bruen*—and concluded that it

remains a constitutional restriction on firearm possession. Specifically, as of August 8, 2023, this

court was aware of 28 district court cases that had analyzed whether § 922(g)(3) is constitutional

after the Supreme Court's *Bruen* decision.[15] In 26 of those 28 cases, the district judges concluded

that § 922(g)(3) remains constitutional after *Bruen*.[16]

---

[15] Among these 28 district court cases, two judges had ruled on the issue in three different cases each, so 24 individual judges had thus far considered this issue. Twenty-two of those judges have concluded that § 922(g)(3) remains constitutional after *Bruen*.

[16] *See United States v. United States v. Wuchter*, No. 23-CR-2024-CJW-MAR, 2023 WL 4999862 (N.D. Iowa Aug. 4, 2023); *United States v. Campbell*, Cause No. 1:22-cr-159-LG-RPM-1, 2023 WL 5009202 (S.D. Miss. Aug. 4, 2023); *United States v. Springer*, No. 23-CR-1013-CJW-MAR, 2023 WL 4981583 (N.D. Iowa Aug. 3, 2023); *United States v. Giglio*, Case No. 1:23-cr-39-LG-BWR-1, 2023 WL 4918332 (S.D. Miss. Aug. 1, 2023); *United States v. Striplin*, Case No. 4:21-cr-00289-RK, 2023 WL 4850753 (W.D. Mo. July 28, 2023); *United States v. Beaty*, Case No. 6:22-cr-95-PGB-DCI, 2023 WL 4662247 (M.D. Fla. July 20, 2023); *United States v. Alston*, Case No. 5:23-CR-00021-FL-RN-1, 2023 WL 4758734 (E.D. N. D. July 18, 2023); *United States v. Lewis*, Crim. No. 22-0222-WS, 2023 WL 4604563 (S.D. Ala. July 18, 2023); *United States v Beverly*, Criminal No. 2:21CR36, 2023 WL 4466507 (N.D. W. Va. July 11, 2023); *United States v. Gil*, EP-22-CR-773-DB, 2023 WL 4356067 (W.D. Tex. July 5, 2023); *United States v. Overholser*, No. 3:22-CR-35 JD, 2023 WL 4145343 (N.D. Ind. June 23, 2023); *United States v. Evenson*, No. CR-23-24-BLG-SPW, 2023 WL 3947828 (D. Mont. June 12, 2023); *United States v. Walker*, No. 8:22-CR-291, 2023 WL 3932224 (D. Neb. June 9, 2023); *United States v. Costianes*, No. JKB-21-0458, 2023 WL 3550972 (D. Md. May 18, 2023); *United States v. Parker*, No. 22-CR-4072-LTS-KEM, 2023 WL 2596453 (N.D. Iowa Apr. 25, 2023); *United States v. Le*, No. 4:23-cr-00014-SHL-HCA, 2023 WL 3016297 (S.D. Iowa April 4, 2023); *United States v. Stennerson*, No CR 22-139-BLG-SPW, 2023 WL 2214351 (Feb. 24, 2023 D. Mont.); *United States v. Randall*, ___ F. Supp. 3d___, 2023 WL 3171609 (S.D. Iowa

The court was aware of only two district courts that had thus far determined that §

922(g)(3) is unconstitutional after *Bruen*. *See United States v. Connelly*, No. EP-22-CR-229(2)-

KC, ___ F. Supp.3d ___, 2023 WL 2806324 (W.D. Tex., April 6, 2023) (after granting motion to

reconsider its initial decision, the court reversed its prior decision regarding 922(g)(3) in light of

*United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023));[17] *United States v. Harrison*, ____ F. Supp.

3d___, 2023 WL 1771138 (W.D. Okla. Feb. 3, 2023).[18]

On August 9, 2023, however, the Fifth Circuit Court of Appeals issued a decision on this

issue. Following its decision in *Rahimi*, the Fifth Circuit determined that § 922(g)(3) is

unconstitutional under *Bruen*. *See United States v. Daniels*, ___F.4th ___, 2023 WL 5091317, at

*14 (5th Cir. Aug. 9, 2023). The *Daniels* court ultimately determined that § 922(g)(3) was

unconstitutional because the government "identifie[d] no class of persons at the Founding (or

---

Feb. 14, 2023); *United States v. Posey*, ___F. Supp. 3d___, 2023 WL 1869095 (N.D. Ind. Feb. 9, 2023); *United States v. Lewis*, ___ F. Supp. 3d ___, 2023 WL 187582 (W.D. Okla. Jan 13, 2023); *United States v. Black*, No. 22-133-01, 2023 WL 122920 (W.D. La. Jan. 6, 2023); *Gilpin v. United States*, Crim. No. 2004050-01-CR-C-RK, 2023 WL 387049 (W.D. Miss. Jan. 3 2023); *United States v. Sanchez*, _____ F. Supp. 3d at _____, 2022 WL 17815116, at *3 (W.D. Tex. Dec. 19, 2022); *Fried v. Garland*, ___ F. Supp. 3d at ___, 2022 WL 16731233 (N.D. Fla. Nov. 4, 2022); *United States v. Seiwert*, No. 20-CR-443, 2022 WL 4534605 (N.D. Ill. Sept. 28, 2022); *United States v. Doty*, No. 5:21-CR-21, 2022 WL 17492260 (N.D. W.Va. Sept 9, 2022); *United States v. Daniels*, ___ F.3d at ___, 2022 WL 2654232, at *3 (S.D. Miss. July 8, 2022) *rev'd* ___, 2023 WL 5091317 (5th Cir. Aug. 9, 2023).

[17] The Supreme Court has granted *certiorari* in *Rahimi*, where it may consider the constitutionality of § 922(g)(8) in light of *Bruen*. *See United States v. Rahimi,* 2023 WL 4278450, ___ S. Ct. ___ (June 30, 2023).

[18] The court in *Lewis*, 2023 WL 4604563, at *14-15, thoroughly and thoughtfully explains why it cannot subscribe to the analysis of these two courts. This court similarly cannot subscribe to the analysis of these outlier courts.

even at Reconstruction) who were 'dangerous' for reasons comparable to marihuana [sic] users." *Id.* at *14. This court is not persuaded by the *Daniels* court's decision because that court sought to find in the historical record not a "well-established and representative historical *analogue*" to § 922(g)(3), but rather a "historical *twin*"—thereby imposing a "regulatory straightjacket [sic]" on Congress that vastly exceeds what the Supreme Court requires. *Bruen*, 142 S. Ct. at 2133.

Accordingly, the court denies Espinoza-Melgar's Motion to Dismiss Count 2 of the Indictment based on *Bruen*.

**B.  Section 922(g)(3) Is Not Unconstitutionally Vague.**

The void-for-vagueness doctrine "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The doctrine "rests on the twin constitutional pillars of due process and separation of powers." *United States v. Davis,* 139 S. Ct. 2319, 2325 (2019).

Espinoza-Melgar challenges the constitutionality of § 922(g)(3) under the void-for-vagueness doctrine, asserting that the statute "fails to adequately define what it prohibits," ECF 71 at 4, and that it fails to "establish minimal guidelines to govern law enforcement and keep the separate branches within their proper spheres." *Id.* at 3 (quoting *Sessions v. Dimaya*, 138 S. Ct. 1204, 1228 (Gorsuch, J., concurring) (internal quotations omitted)). Espinoza-Melgar does not argue that the statute is vague as applied to the facts of his case. As such, the court must first determine whether a defendant may challenge that a statute is vague on its face without also arguing that the statute is vague as applied to his own conduct.

20

### 1.  Espinoza-Melgar Cannot Challenge § 922(g)(3) as Being Unconstitutionally Vague on Its Face.

Espinoza-Melgar argues that it "is no longer in dispute that a defendant can challenge a law as facially invalid for vagueness without proving that it is vague as applied to him personally," following the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015). ECF 71 at 2. As explained below, the court disagrees.

In *Johnson*, the Supreme Court determined that the residual clause of the Armed Career Criminal Act ("ACCA") was unconstitutionally vague. 567 U.S. at 597. The ACCA, codified at 18 U.S.C. § 924(e)(1), imposes harsher sentences on defendants who had three or more previous convictions for a "violent felony," as defined in 18 U.S.C. § 924(e)(2)(B). Section 924(e)(2)(B) defines "violent felony" to include "burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.*" The italicized phrase is commonly referred to as the "residual clause."

The Supreme Court had previously determined that the residual clause "mandate[d] a formal categorical approach," requiring courts to "look[] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions" in determining whether a particular defendant had three or more previous convictions for violent felonies. *Taylor v. United States*, 495 U.S. 575, 600 (1990). Therefore, "[d]eciding whether the residual clause covers a crime . . . requires a court to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury." *Johnson*, 576 U.S. at 596 (quoting *James v. United States*, 550 U.S. 192, 208 (2007)).

The *Johnson* Court noted that "this abstract inquiry offers significantly less predictability than one '[t]hat deals with the actual, not with an imaginary condition other than the facts.'" *Id.* at 604 (quoting *International Harvester Co. of Am. v. Com. of Kentucky*, 234 U.S. 216, 223 (1914)). The Court held that, due to the categorical approach, the residual clause imposes two types of uncertainty regarding "how to estimate the risk posed by a crime" and "how much risk it takes for a crime to qualify as a violent felony." *Id.* at 597–98. The categorical approach perpetuates the former type of uncertainty: "How does one go about deciding what kind of conduct the 'ordinary case' of a crime involves?" *Id.* at 597. The residual clause's "serious potential risk of physical injury" language fosters the latter type of uncertainty—though, the Court noted that it "do[es] not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct"; the uncertainty arises only when this qualitative standard is mapped onto an already dubious abstraction. *Id.* at 603–04.

Therefore, the *Johnson* Court found "that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges" and is therefore unconstitutionally vague on its face. *Id.* at 597. "By combining indeterminacy about *how to measure the risk* posed by a crime with indeterminacy about *how much risk it takes* for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* at 598 (emphasis added).

**a.** ***Johnson*** **does not disturb the Supreme Court's precedents regarding which defendants can make a facial vagueness challenge.**

The *Johnson* Court rejected the notion that "a statute is void for vagueness only if it is vague in all its applications," *id.* at 625 (Alito, J., dissenting), finding instead that the Court's "holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Id.* at 602 (majority opinion). Espinoza-Melgar argues that if an unconstitutionally vague statute does not need to be vague in all applications, then, by extension, "a criminal defendant need not show the statute in question is vague as applied to the particular facts of his case in order to mount a vagueness challenge." ECF No. 71 at 2 (quoting *United States v. Morales-Lopez,* Case No. 2:20-cr-00027-JNP, 2022 WL 2355920, at *4 (D. Utah June 30, 2022)).[19]

Espinoza-Melgar contends that his argument finds support in *Johnson* because the Supreme Court never assessed whether the ACCA's residual clause was vague as applied to Johnson's conduct. But Espinoza-Melgar's argument does not necessarily follow from the Supreme Court's more limited holding that an unconstitutionally vague statute need not be vague in all applications. Moreover, as discussed *infra*, the Supreme Court could not have adjudicated whether the residual clause was vague as applied to Johnson's conduct.

To conclude that an unconstitutionally vague statute need not be vague in all its applications does not necessarily mean that any defendant can facially challenge the statute. The

---

[19] Espinoza-Melgar mistakenly attributes this quote to the Supreme Court in *Johnson*. This quote, however, is from the decision of another judge in this district. *See Morales-Lopez,* 2022 WL 2355920, at *4.

former proposition answers *whether* a defendant can successfully show that a statute is unconstitutionally vague on its face; the latter proposition answers *which* defendants can lodge facial challenges. Discussing *Johnson* in his dissent in *Dimaya*, Justice Thomas wrote that "[w]hile *Johnson* weakened the principle that a facial challenge requires a statute to be vague in all applications . . . it did not address whether a statute must be vague as applied to the person challenging it." *Dimaya*, 138 S. Ct. at 1250 (Thomas, J., dissenting) (internal citations omitted). Nor did *Johnson* acknowledge—let alone purport to undermine—the plethora of Supreme Court jurisprudence that holds that a defendant "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982); *accord Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."). *Johnson* stands only for the proposition that a defendant can successfully show that a statute is unconstitutionally vague even if they cannot show that the statute is vague in all applications; in other words, *Johnson* lowers a defendant's burden to successfully show that a statute is unconstitutionally vague. But *Johnson* does not upend the Supreme Court's precedents defining *which* defendants can make this now-lowered showing.

The court recognizes that *Johnson* and *Hoffman Estates* appear to present a paradox. *Johnson* holds that if a statute can be unconstitutionally vague despite having some non-vague applications, then surely there are some defendants to whom a statute is clear as applied—yet the statute is nevertheless unconstitutionally vague on its face. But *Hoffman Estates* prohibits those

24

defendants from challenging the statute for being unconstitutionally vague, and *Johnson* does not imply—let alone state—that its holding abrogates *Hoffman Estates*' long-held rule.

First, this court notes that it is the Supreme Court's "prerogative alone to overrule one of its precedents," *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997). So, until the Supreme Court holds otherwise, *Hoffman Estates* continues to bind this court. And moreover, the apparent inconsistency between *Johnson* and *Hoffman Estates* can be resolved by returning to the underlying rationale of the void-for-vagueness doctrine. The doctrine applies when a statute "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). And "[w]hen the challenged statute clearly proscribes a defendant's conduct, neither of these rationales is implicated. It would untether the vagueness doctrine from its moorings to permit a facial vagueness challenge in such a case. *See United States v. Hasson*, 26 F.4th 610, 619 (4th Cir. 2022). This court finds that *Johnson* did not untether the vagueness doctrine from its moorings.

Moreover, there is another explanation regarding why the *Johnson* Court did not determine whether the residual clause was vague as applied to Johnson's conduct—and this explanation is simpler than Espinoza-Melgar's explanation (which requires finding that *Johnson* implicitly overruled *Hoffman Estates*). Because of the unique nature of the residual clause's categorical approach under *Taylor*, discussed *supra*, the Supreme Court was foreclosed from assessing whether the residual clause was vague as applied to Johnson's conduct. Instead, the categorical approach required the Court to instead assess only the "ordinary case" of Johnson's

alleged criminal activity. Because of the categorical approach, it would have been meaningless and inappropriate for the Supreme Court to inquire into whether the residual clause was unconstitutionally vague as applied to Johnson's real-world conduct.[20] Thus, even if this court were to conclude that the *Johnson* Court decided that any defendant (including one whose conduct was clearly proscribed) can facially challenge a statute for vagueness, such a decision was irrelevant to the *Johnson* holding and is therefore dicta.

     **b.**   **Later interpretations of *Johnson* confirm that it does not undermine the *Hoffman Estates* rule.**

The Supreme Court's post-*Johnson* decisions and the interpretations of *Johnson* by various Courts of Appeals support this court's determination that *Johnson* did not undermine *Hoffman Estates*. It remains the law that a defendant whose conduct is clearly proscribed by a statute cannot argue that the statute is unconstitutionally vague on its face.

In *Dimaya*, the Supreme Court held that the Immigration and Nationality Act's ("INA") residual clause—codified at 18 U.S.C. § 16(b)—was unconstitutionally vague. *See* 138 S. Ct. at 1211. And like the ACCA's residual clause, the INA's residual clause required courts to employ the categorical approach to determine if a crime was a "crime of violence." *See Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004). The *Dimaya* Court found that the same "[t]wo features of [the ACCA's] residual clause [that] conspire[d] to make it unconstitutionally vague," *Johnson*, 576

---

[20] If the Court had been permitted to apply the statute to Johnson's real-world conduct (notwithstanding *Taylor*), then "[t]he Court all but concedes that the residual clause *would be* constitutional." *Johnson*, 576 U.S. at 632 (Alito, J., dissenting) (emphasis added); *see also United States v. Davis*, 139 S. Ct. 2319, 2327 (2019) ("[A] case-specific approach would avoid the vagueness problems that doomed the statute[] in *Johnson*").

U.S. at 597, were "combined in the same constitutionally problematic way" in the INA's residual clause. *Dimaya*, 138 S. Ct. at 1213. Like in *Johnson*, the *Dimaya* Court did not address whether the INA's residual clause was vague as applied to Dimaya's conduct—because, like in *Johnson*, the categorical approach required by *Leocal* prohibited the *Dimaya* Court from applying the statute to Dimaya's real-world conduct. As such, *Dimaya* also does not add any weight to Espinoza-Melgar's argument that a defendant whose conduct is clearly proscribed by a statute can nevertheless facially challenge that statute.

Then, in *Davis*, the Supreme Court held that a residual clause in 18 U.S.C. § 24(c)(3)(B)[21] was unconstitutionally vague. 139 S. Ct. at 2323. Unlike the statutes at issue in *Johnson* and *Dimaya*, which required "court[s] to reconstruct, long after the original conviction, the conduct underlying that conviction," *Johnson*, 576 U.S. at 605, the statute at issue in *Davis* "focuses on the conduct with which the defendant is currently charged." *Davis*, 139 S. Ct. at 2327.

But the differences between the statutes ended there—the Supreme Court determined that § 924(c)(3)(B) required a categorical approach, *see id.*, and (in accordance with *Johnson* and *Dimaya*) was therefore unconstitutionally vague. *Id.* at 2336. Again, as in *Johnson* and *Dimaya*, the categorical approach prevented the Supreme Court from assessing whether the statute was vague as applied to the defendants' real-world conduct—so *Davis* also does not extend *Johnson*.

---

[21] This statute defined "crimes of violence" as used throughout § 924(c), which is a statute that imposes significant penalties for using or possessing a firearm in the course of drug trafficking or any crime of violence.

Even the Supreme Court—in a post-*Johnson* decision—recognized that *Johnson* did not undermine the long-standing *Hoffman Estates* rule. In *Expressions Hair Design v. Schneiderman*, decided after *Johnson*, the Court stated that "[a] plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim." 581 U.S. 37, 48 (2017) (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010)). The Court's approving acknowledgement of the *Hoffman Estates* rule in a post-*Johnson* decision—even if it is dicta—supports the notion that *Johnson* did not undermine *Hoffman Estates*.

Notably, the Courts of Appeals that have addressed the void-for-vagueness doctrine since *Johnson* have unanimously agreed that *Johnson* did not undermine the *Hoffman Estates* rule. *See United States v. Requena*, 980 F.3d 30, 40 (2nd Cir. 2020) ("Neither the Supreme Court nor our Court has definitively resolved whether facial vagueness challenges not based on the First Amendment may proceed against statutes that can constitutionally be applied to the challenger's own conduct.")[22]; *United States v. Hasson*, 26 F.4th 610, 620 (4th Cir. 2022) ("[W]hatever *Johnson* . . . anticipated and rejected . . . it was not the rule foreclosing a litigant whose conduct is clearly prohibited by a statute from bringing a vagueness challenge" (internal citations omitted)); *United States v. Westbrooks*, 858 F.3d 317, 325 (5th Cir. 2017), *cert. granted & judgment vacated on other grounds*, 138 S. Ct. 1323 (2018) ("*Johnson* did not change the rule that a defendant whose conduct is clearly prohibited cannot be the one making that challenge.");

---

[22] The *Requena* court goes on to conclude that even if the defendants could facially challenge the statute at issue, their challenge would fail because they could not show that the statute was vague in all applications. 980 F.3d at 41.

*United States v. Cook*, 970 F.3d 866, 873 (7th Cir. 2020) ("[A] litigant challenging the statute ordinarily must show that it is vague as applied to him; and if the statute undoubtedly applies to his conduct, he will not be heard to argue that the statute is vague as to one or more hypothetical scenarios."); *United States v. Bramer*, 832 F.3d 908, 909 (8th Cir. 2016) ("Though Bramer need not prove that § 922(g)(3) is vague in all its applications, our case law still requires him to show that the statute is vague as applied to his particular conduct."); *Kashem v. Barr*, 941 F.3d 358, 375 (9th Cir. 2019) ("[A] defendant who cannot sustain an as-applied vagueness challenge to a statute cannot be the one to make a facial vagueness challenge to the statute.");[23] *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1190 (10th Cir. 2021), *rev'd on other grounds*, 143 S. Ct. 2298 (2023) ("In [*Johnson*], the Court described the standard for determining whether a statute is, as a matter of law, unconstitutionally vague—not the standard for determining when a party may bring a vagueness challenge.").

The Supreme Court's post-*Johnson* decisions—and all the Courts of Appeals that have applied *Johnson*—agree that *Johnson* does not allow a defendant like Espinoza-Melgar—who both (1) fails to challenge that § 922(g)(3) is vague as applied to his conduct, and (2) admits that he is a long-time, habitual user of marijuana (and was found with marijuana) at the time he was found having possession of a firearm—from challenging that § 922(g)(3) is vague on its face.

---

[23] The *Kashem* court concluded that, based on *Johnson*, "the general rule that a litigant whose conduct is clearly prohibited by a statute cannot be the one to make a facial vagueness challenge is subject to exceptions." 941 F.3d at 375. This court is not persuaded that *Johnson* created an exception to the general rule—after all, the *Johnson* Court did not find that Johnson's conduct was clearly proscribed by the statute, so *Johnson* could not have created an exception.

Accordingly, the court denies Espinoza-Melgar's Motion to Dismiss Count 2 of the Indictment on the ground that § 922(g)(3) is unconstitutionally vague on its face.

### 2. Even if Espinoza-Melgar Could Bring a Facial Challenge, § 922(g)(3) Is Not Unconstitutionally Vague on Its Face.

Espinoza-Melgar argues that § 922(g)(3) is unconstitutionally vague on its face because it "does not provide any usable definition of what it means to be a 'user' or what it means to be 'addicted,'" thereby "fail[ing] to give ordinary people notice of what it prohibits, and . . . requir[ing] courts, rather than the legislature, to decide what conduct constitutes a crime under the provision." ECF No. 71 at 4.

### a. Section 922(g)(3) provides fair notice to ordinary people of what conduct is prohibited.

In determining whether a statute is unconstitutionally vague, "the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997). The question, then, is whether a person "of common intelligence," *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926), would have known that they were an "unlawful user of or addicted to any controlled substance" at the time they possessed a firearm. § 922(g)(3).

The Tenth Circuit has examined § 922(g)(3) on numerous occasions in as-applied vagueness challenges. *See United States v. Reed*, 114 F.3d 1067, 1071 (10th Cir. 1997); *United States v. Sanders*, 43 Fed. App'x. 249, 256 (10th Cir. 2002); *United States v. Bennett*, 329 F.3d 769, 777 (10th Cir. 2003); *United States v. Edwards*, 540 F.3d 1156, 1162 (10th Cir. 2008); *United States v. Richard*, 350 Fed. App'x. 252, 260 (10th Cir. 2009). On each occasion, the

Tenth Circuit found that § 922(g)(3) was not vague as applied—and the Tenth Circuit's reasoning remains as pertinent now as it was previously.

In *Reed*, the Tenth Circuit reversed a lower court decision that determined that § 922(g)(3) was unconstitutionally vague because "the statute provides no time frame in which 'use' must occur in order for someone to be an 'unlawful user.'" 114 F.3d at 1071 (internal citations omitted). The Tenth Circuit advised that the "proper way to deal with [potential vagueness] is to consider whether the statute is susceptible of a construction which would avoid the vagueness problem, rather than to declare the statute void." *Id.* Further, the Tenth Circuit stated that it "think[s] it apparent that section 922(g) may be susceptible of [a construction which would avoid the potential vagueness problem]." *Id.* That other construction, said the Tenth Circuit, is to accept that the term "'user' . . . must connote some temporal element." *Id.*; *accord Bennett*, 329 F.3d at 778 ("[The defendant's] regular and ongoing use of [controlled substances] during the same time period as his firearm possession qualifies him as an 'unlawful user.").

Because a defendant can be convicted under § 922(g)(3) only if the government shows that a defendant's drug use was "regular and ongoing . . . during the same time period as his firearm possession," *Bennett*, 329 F.3d at 778, the court finds that § 922(g)(3) outlines a clearly ascertainable core of proscribed conduct that "ma[kes] it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267. Because § 922(g)(3) provides "ordinary people" with fair notice of "what conduct is prohibited," *Kolender*, 461 U.S. at 357, the court holds that § 922(g)(3) is not unconstitutionally vague.

    **b.**   **Section 922(g)(3) does not violate the separation of powers doctrine.**

Espinoza-Melgar additionally argues that § 922(g)(3) is unconstitutionally vague because "it requires courts, rather than the legislature, to decide what conduct constitutes a crime under the provision." ECF No. 71 at 4. The Supreme Court stated in *Davis* that "[o]nly the people's elected representatives in the legislature are authorized to 'make an act a crime.'" 139 S. Ct. at 2325 (quoting *United States v. Hudson*, 11 U.S. 32, 34 (1812)). The *Davis* Court explained that because "[v]ague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges," the public loses the "ability to oversee the creation of the laws they are expected to abide." *Id.*

The Tenth Circuit has acknowledged that it is "probably correct" that "§ 922(g)(3) is unconstitutionally vague in the absence of a judicially-created requirement of sufficient temporal nexus." *Sanders*, 43 Fed. App'x. at 256. But Espinoza-Melgar does not expressly challenge this temporal-nexus requirement in his Second Motion to Dismiss, arguing more broadly that "the statute leaves" multiple temporal options—"daily, weekly, monthly, or annually"—"as potential options" for "how frequently . . . a person [must] use a controlled substance to be counted a 'user.'" ECF No. 71 at 4. Espinoza-Melgar argues that "the choice between these various [temporal] possibilities is a policy choice" that "fails to provide notice." *Id.* at 4–5.

As discussed *supra,* because of the temporal nexus requirement, the court does not find that these various temporal options fail to provide notice.  To the extent Espinoza-Melgar intended to challenge the validity of this temporal-nexus requirement under separation of powers principles, the court disagrees because the temporal-nexus requirement has a textual basis.

Section 922(g)(3) prohibits "any person who *is* an unlawful *user* of or *addicted* to any controlled substance" from possessing firearms (emphasis added). These three emphasized words provide the complete textual fabric for the temporal-nexus requirement. First, the conjugated form of the verb "to be," which connects a person's status as a drug user to their firearm possession, is in the present tense—thereby requiring the person's status as an unlawful user to be contemporaneous with their firearm possession. The Supreme Court has held that "Congress' use of a verb tense is significant in construing statutes." *United States v. Wilson*, 503 U.S. 329, 333 (1992).

Second, "user"—in context—strongly implies regularity. It is true that, in isolation, "the word 'user' is adrift in ambiguity." ECF No. 71 at 4. But in the context of § 922(g)(3), "evidence of [a] single use" of a controlled substance is "insufficient" to prove that a person is an unlawful user. *United States v. Augustin*, 376 F.3d 135, 138 (3d Cir. 2004). So "user" must refer to a person who uses a controlled substance more than once. Yet a "user" probably—though not certainly—refers to something different than a person who is "addicted" to a controlled substance. *Compare Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 574 (1995) ("[The] Court will avoid a reading which renders some words altogether redundant.") *with Fort Stewart Schools v. Fed. Lab. Rels. Auth.*, 495 U.S. 641, 646 (1990) ("It might reasonably be argued, of course, that these two exceptions [in the instant case, the separate items 'user' and 'addicted'] are indeed technically unnecessary, and were inserted out of an abundance of caution."). And Espinoza-Melgar rightly points out that (at least out of context) a person could be fairly described as either an "irregular user" or a "regular user" of a drug—but the court presumes that Congress did not

intend for § 922(g)(3) to generate absurd results, as convicting an irregular drug user under § 922(g)(3) might be. *See, e.g.*, *United States v. Kirby*, 74 U.S. 482, 486–87 (1868) ("General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character."). The absurdity canon thus helps the court understand that "user" as used in § 922(g)(3) must mean something akin to "regular user."

As such, Congress's use of the word "user" implies that a person can be convicted under § 922(g)(3) only if they use a controlled substance regularly and (as discussed *supra*) contemporaneously with their firearm possession. The concept of the temporal-nexus requirement is derived from the text of § 922(g)(3), which implies that Congress intended to impose a temporal-nexus requirement. The judicial imposition of this requirement shows respect for the will of Congress.

Third, "addicted" has a clear meaning. Espinoza-Melgar argues that "addict" is "a colloquial term, not a clinical one, so there is no established meaning that Congress might have adopted." ECF 71 at 5. Yet the National Institutes of Health characterizes addiction as a "chronic disease characterized by drug seeking and use that is compulsive, or difficult to control." *Understanding Drug Use and Addiction*, NAT'L INSTS. OF HEALTH (2018). The American Psychiatric Association similarly describes addiction as "a complex condition in which there is uncontrolled use of a substance." *What Is a Substance Abuse Disorder?*, AM. PSYCHIATRIC ASS'N (2020). The Mayo Clinic defines addiction as "a disease that . . . leads to an inability to control the use of a legal or illegal drug." *Drug Addiction*, MAYO CLINIC (2022). And while our

understanding regarding the nature of substance abuse disorders has evolved in recent years, "addiction, in its current medical meaning of . . . 'a compulsion and need to continue taking a drug' . . . has been in widespread use only since the 20th century"—implying that the Congress that created § 922(g)(3) shared this modern understanding of the word "addiction." Marc-Antoine Crocq, *Historical and Cultural Aspects of Man's Relationship With Addictive Drugs*, 9 DIALOGUES IN CLINICAL NEUROSCIENCE 355, 356 (2007).

Based on these synonymous definitions posited by reputable medical sources (including during the time at which § 922(g)(3) was created), the court is not persuaded by Espinoza-Melgar's argument that Congress did not intend to adopt this well-established meaning. And "[o]f that [established] meaning the court is bound to take judicial notice." *Nix v. Hedden*, 149 U.S. 304, 306–07 (1893). Moreover, these sources all highlight that drug addiction involves the user's inability to control their usage of a drug—distinguishing an "addicted" person from a "user" (even if an addicted person and a user both use the controlled substance with the same degree of frequency) and thereby obviating any concerns about the statute's potentially redundant language.

The court also finds it notable that the Courts of Appeals have all found similar temporal-nexus restrictions in § 922(g)(3). *See, e.g.*, *United States v. Caparotta*, 676 F.3d 213, 216 (1st Cir. 2012) ("[A]n unlawful user is one who engages in [(1)] regular use [(2)] over a long period of time [(3)] proximate to or contemporaneous with the possession of the firearm." (internal citations omitted)); *United States v. Yepez*, 456 Fed. App'x. 52, 55 (2d Cir. 2012) ("[The defendant] regularly used marijuana during the time period he possessed the two guns."); *United*

*States v. Augustin*, 376 F.3d 135, 139 (3d Cir. 2004) ("[T]o be an unlawful user, one needed to have engaged in regular use over a period of time proximate to or contemporaneous with the possession of the firearm."); *United States v. Hasson*, 26 F.4th 610, 615 (4th Cir. 2022) (§ 922(g)(3) prohibits the "possession of firearms by an individual whose drug use is consistent, prolonged, and close in time to his firearm possession." (internal citations omitted)); *United States v. Patterson*, 431 F.3d 832, 838–39 (5th Cir. 2005) ("[C]ases interpreting § 922(g)(3) typically discuss two concepts: contemporaneousness and regularity."); *United States v. Bowens*, 938 F.3d 790, 793 (6th Cir. 2019) ("[T]he government must prove . . . that the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his purchase or possession of a firearm." (internal citations omitted)); *United States v. Yancey*, 621 F.3d 681, 682 (7th Cir. 2010) (per curiam) ("An 'unlawful user' is someone . . . who regularly ingests controlled substances," *id.*, and "the habitual abuse [must] be contemporaneous with the gun possession." *Id.* at 687); *United States v. Carnes*, 22 F.4th 743, 748 (8th Cir. 2022) ("[W]e interpreted § 922's 'unlawful user' element to require a temporal nexus between the proscribed act (for § 922(g)(3), possession of a firearm) and regular drug use."); *United States v. Purdy*, 264 F.3d 809, 813 (9th Cir. 2001) ("[T]he government must prove . . . that the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his purchase or possession of a firearm."); *United States v. Bennett*, 329 F.3d 769, 778 (10th Cir. 2003) ("[The defendant's] regular and ongoing use of marijuana and methamphetamine during the same time period as his firearm possession qualifies him as a 'unlawful user.'"); *United States v. Edmonds*, 348 F.3d 950, 951 (11th Cir. 2003) (per curiam) ("[T]he Government presented . . . testimony

showing [the defendant's] unlawful use of marijuana was regular, ongoing, and contemporaneous with the commission of the offense of possession of a firearm.").

While the uniform adoption of the temporal-nexus requirement by the Courts of Appeals is circumstantial evidence of Congress's intent to impose this requirement on § 922(g)(3), the circuits' synonymous—if not identical—interpretations of § 922(g)(3) provide strong support for this court's own textual analysis. And to the extent that "the failure of 'persistent efforts . . . to establish a standard' can provide evidence of vagueness," *Johnson*, 576 U.S. at 598 (quoting *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 91 (1921)), these successful efforts in the Courts of Appeals to establish a uniform standard cut against Espinoza-Melgar's argument that § 922(g)(3) is vague.

The court's textual finding of a temporal-nexus requirement in § 922(g)(3) demonstrates that the scope of the statute's prohibited conduct is readily discernable, if not perfectly contoured, as discussed *supra* regarding the statute's provision of fair notice. Yet "perfect clarity and precise guidance have never been required," *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989), and it is not true that "the mere fact that close cases can be envisioned renders a statute vague." *Williams*, 553 U.S. at 305.

But even if the temporal-nexus requirement is atextual, courts could nevertheless impose this restriction on the statute without violating separation of powers principles. After all, when a court narrows a "federal statute[] to avoid constitutional shoals," the court does "not legislate, but instead respects the legislature, by preserving a statute through a limiting interpretation." *Skilling v. United States*, 561 U.S. 358, 409 n.43 (2010); *see also United States v. Brune*, 767

F.3d 1009, 1024 (10th Cir. 2014) ("In the vagueness context, '[i]t has long been [the Supreme Court's] practice . . . before striking a federal statute as impermissibly vague, to consider whether the prescription is amenable to a limiting construction." (quoting *Skilling*, 561 U.S. at 405)). Striking down an act of Congress, on the other hand, is a matter of "great gravity and delicacy," and "it is a cardinal principle" that courts may strike down laws only when "a construction of the statute . . . by which the question may be avoided" is not "fairly possible." *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 348 (1936) (Brandeis, J., concurring).

The temporal-nexus requirement has a strong foundation in § 922(g)(3)'s text. But even if the temporal-nexus requirement were an atextual judicial creation that, in turn, "erod[es] the people's ability to oversee the creation of the laws they are expected to abide," *Davis*, 139 S. Ct. at 2325, then at least the temporal-nexus requirement comports with the rule of lenity. After all, the temporal-nexus requirement functions to reduce the broad spectrum of conduct that could be penalized in its absence, as Espinoza-Melgar contemplates in his brief. ECF No. 71 at 4–5. And a court's lenient interpretation of a criminal statute does not violate the separation of powers doctrine.

Further, the separation of powers doctrine is relevant in the context of vague statutes only insofar as the vague statute "hand[s] responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges." *Davis*, 139 S. Ct. at 2325. But that danger is not implicated by § 922(g)(3): When they impose the temporal-nexus requirement, courts do not criminally sanction any conduct that Congress did not intend to punish.

### c.    Summary

Espinoza-Melgar cannot facially challenge § 922(g)(3) because *Johnson* did not upend the long-standing Supreme Court precedent that a defendant "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). But even if Espinoza-Melgar could mount a facial challenge, § 922(g)(3) is not vague on its face. As is necessary to comport with due process, the statute provided Espinoza-Melgar with fair notice that his conduct was unlawful and therefore subject to criminal sanctioning, and the court's imposition of a temporal-nexus requirement does not violate the separation of powers doctrine.

### III.  CONCLUSION AND ORDER

For the foregoing reasons, the court hereby DENIES Defendant's Motion to Dismiss Count 2 of the Indictment [ECF No. 64] and Second Motion to Dismiss Count 2 of the Indictment [ECF No. 71]. Counsel are directed to jointly contact the court to schedule the trial of this matter.

DATED this 16th day of August, 2023.

BY THE COURT:

DALE A. KIMBALL
United States District Judge